**PATTERSON LAW GROUP**
James R. Patterson (CA 211102)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: 619.756.6990
Facsimile:  619.756.6991
jim@pattersonlawgroup.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASAL SALLY MANOUCHEHRI, on Behalf of Herself and All Others Similarly Situated,<br><br>          Plaintiff,<br><br>vs.<br><br>STYLES FOR LESS, INC., a California corporation and DOES 1 through 20,<br><br>          Defendant. | Case No.  **'14CV2521 DMS NLS**<br><br>**CLASS ACTION COMPLAINT**<br><br>(DEMAND FOR JURY TRIAL) |

Plaintiff ASAL MANOUCHEHRI brings this action on behalf of herself and all others similarly situated against Defendant Styles for Less, Inc. and Does 1 through 20 and states:

**NATURE OF THE ACTION**

1.  Defendant Styles for Less, Inc. ("Styles for Less") obtained its customers' cellular telephone numbers through its website and in its stores. Styles for Less then sent marketing messages to its customers via text without obtaining their prior express written consent. Styles for Less did not provide adequate disclosures about its telemarketing messages, and the customers who visited Styles for Less' website were required to provide their phone number and other information to create an account with Styles for Less before adding any items to their online shopping cart, thereby requiring customers to

provide their information as a condition of purchasing any goods. After acquiring its customers' information, including cellular telephone numbers, Defendant repeatedly and intentionally violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and 47 C.F.R. § 64.1200 by sending marketing and advertising messages to its customers' cell phone via SMS texting.

2. Congress was prompted to pass the TCPA due to "[v]oluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes . . . ." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012). The TCPA was designed to prevent calls and messages like the ones described within this Complaint, and to protect the privacy of citizens like Plaintiff.

3. In enacting the TCPA, Congress intended to give consumers a choice as to how telemarketers and creditors can contact them, and it made specific findings that "residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." TCPA, Pub. L. No. 102-243, § 2(10), 105 Stat. 2394 (1991). And since "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer," then "[b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* §§ 2(11)-(12), 105 Stat. 2394-95.

4. The Ninth Circuit has held that under the TCPA, it is "unlawful 'to make any call' using an [automatic telephone dialing system]," and "[w]hile the TCPA does not define 'call,' the FCC has explicitly stated that the TCPA's prohibition on ATDSs 'encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls . . . .'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (*quoting In re Rules and Regulations Implementing the Tel.*

*Consumer Prot. Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003)). Therefore, "a text message [SMS message] is a 'call' within the meaning of the TCPA." *Id.*

5. An "automatic telephone dialing system" means "equipment which has the capacity--(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The "clear language of the TCPA 'mandates that the focus must be on whether the equipment has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.'" *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (*quoting Satterfield*, 569 F.3d at 951) (emphasis in original) (internal quotations omitted). The system "need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Id.*

6. Effective October 16, 2013, prior express written consent is required to initiate or cause to be initiated any telephone call (or text) that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system to any telephone number assigned to a cellular telephone service. *See* 47 C.F.R. §§ 64.1200(a)(1)(iii) and (2). Under this regulation, the only instances in which the prior express consent does not need to be in writing are when a call is made for emergency purposes, when a call is made by or on behalf of a tax-exempt nonprofit organization, or when a call that delivers a health care message is made by, or on behalf of, a covered entity or its business associate, as those terms are defined in the HIPAA Privacy Rule. *See* 47 C.F.R. §§ 64.1200(a)(2).

7. Styles for Less sends its texts using an automatic telephone dialing system to its customers' cellular telephones for advertising and marketing purposes ***only***—not for emergency purposes. Styles for Less is not a tax-exempt nonprofit organization—it is a for-profit corporation. And since Styles for Less is not a covered entity or a business associate under HIPAA, it does not deliver health care messages to customers. Therefore,

Styles for Less must—but does not—obtain prior express written consent from its customers prior to sending texts to them.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over Defendant and the claims set forth below pursuant to 28 U.S.C. § 1331 because this action arises from a violation of federal law.

9. This Court has personal jurisdiction over Defendant because Styles for Less is incorporated under the laws of the State of California, and it does business in California, including in the Southern District of California. Styles for Less has accepted payment in this District for the transaction of business, which has caused Styles for Less to incur both obligations and liabilities in this District.

10. Venue is appropriate under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District: Plaintiff resides in this District, the transaction between Plaintiff and Defendant occurred in this District, and the harm occurred in this District because Plaintiff was texted by Defendant here.

## PARTIES

11. Plaintiff Asal Manouchehri resides in San Diego, California. Plaintiff is, and at all times mentioned herein was, a "person" as that term is defined by 47 U.S.C. § 153(39). Plaintiff was contacted by Styles for Less using an automatic telephone dialing system to send advertising and marketing texts to her cellular telephone even though she did not grant prior express written consent to Styles for Less to do so.

12. Defendant Styles for Less, Inc. is a California corporation, with its principal place of business located at 1205 North Miller Street, Anaheim, California 92806. Defendant distributes, markets, and sells its retail clothing products to [tens of thousands] of consumers in California through its retail stores, on its website, and via marketing text messages. Defendant is, and at all times mentioned herein was, a "person" as that term is defined by 47 U.S.C. § 153(39).

13. The true names and capacities, whether individual corporate, associate, or otherwise, of defendants sued herein as Does 1 through 20, inclusive, are currently unknown to Plaintiff, who therefore sues these defendants by such fictitious names under Code of Civil Procedure § 474.

14. Plaintiff is informed and believes, and based thereon alleges, that each of the defendants designated herein as a Doe is legally responsible in some manner for the unlawful acts referred to herein. Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the defendants designated hereinafter as Does when such identities become known.

15. Plaintiff is informed and believes, and thereon alleges, that at all times material hereto and mentioned herein, each defendant sued herein was the agent, servant, employer, joint venturer, partner, subsidiary, parent, division, alias, and/or alter ego of each of the remaining defendants and was, at all times, acting within the purpose and scope of such agency, servitude, employment, ownership, subsidiary, alias, and/or alter ego and with the authority, consent, approval, control, influence, and ratification of each remaining defendant sued herein.

## FACTUAL ALLEGATIONS

### Plaintiff's Allegations

16. On several occasions in the past, Plaintiff visited Defendant's retail establishments located in San Diego, California, including the stores located at 8440 Rio San Diego Drive, San Diego, California 92108 and 11860 Carmel Mountain Road #210, San Diego, California 92128.

17. On one such occasion, Plaintiff was required to input her personal information, including her cell phone number into Defendant's point of sale registry.

18. Plaintiff did not provide express written consent to receive Defendant's SMS text message marketing and advertisement messages.

19. Following October 16, 2013, Plaintiff received several advertising and marketing SMS text messages on her personal cell phone. *See* Exhibit "A".

**The Delivery Restrictions On Telemarketing Require Prior Express Written Consent Before Sending Marketing Text Messages To Cellular Telephones**

20.     On October 16, 2013, the amendments to 47 C.F.R. § 64.1200(a)(2) became effective.  The regulation now requires express written consent before a text message introducing an advertisement or other telemarketing is sent; it states:

> No person or entity may: . . . Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the ***prior express written consent*** of the called party or the prior express consent of the called party when the call is made by or on behalf of a tax-exempt nonprofit organization, or a call that delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.

47 C.F.R. § 64.1200(a)(2), effective October 16, 2013 (emphasis added).

21.     Defendant cannot send SMS text messages containing advertisements or which constitutes telemarketing to its customers' cell phones. Paragraphs (a)(1)(i) through (iii) of 47 C.F.R. § 64.1200 read as follows:

> No person or entity may: (1) Except as provided in paragraph (a)(2) of this section, initiate any telephone call (***other than a call made for emergency purposes*** or is made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice:
>
> (i) To any emergency telephone line, including any 911 line and any emergency line of a hospital, medical physician or service office, health care facility, poison

> control center, or fire protection or law enforcement agency;
>
> (ii) To the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or
>
> (iii) To any telephone number assigned to a paging service, *cellular telephone service*, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 C.F.R. § 64.1200(a)(1)(i) through (iii) (emphasis added).

22.  Defendant does not acquire express written consent from its customers prior to sending the offending SMS text messages. According to 47 C.F.R. § 64.1200(f)(8):

> As used in this section: . . . The term prior express written consent means *an agreement, in writing, bearing the signature of the person called* that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.
>
> (i) The written agreement shall include a *clear and conspicuous disclosure* informing the person signing that:
>
>   (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.
>
> (ii) The term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

47 C.F.R. § 64.1200(f)(8) (emphasis added).

23. As indicated by 47 C.F.R. § 64.1200(a)(1)(iii), Defendant's texts using an automatic telephone dialing system to the cellular telephones belonging to Plaintiff and the Class are covered by this regulation.

24. As stated by 47 C.F.R. § 64.1200(a)(1) and the amendments to 47 C.F.R. § 64.1200(a)(2), Defendant is required to obtain prior express written consent before sending texts using an automatic telephone dialing system to the cellular telephones belonging to Plaintiff and the Class because Defendant does not send its texts for emergency purposes, it is not a tax-exempt nonprofit organization, and it does not deliver health care messages to customers as a covered entity or a business associate under HIPAA.

25. As stated by 47 C.F.R. § 64.1200(f)(8), prior express written consent means "an agreement, in writing, bearing the signature of the person called." The agreement must contain a "clear and conspicuous disclosure" informing the signatory that she is authorizing the seller to deliver telemarking calls using an automatic telephone dialing system and that she is not required to sign the agreement as a condition of making a purchase from the seller. Defendant has not met any of these requirements—there are no disclosures regarding the texts on Defendant's website or in its privacy policy, and Plaintiff and the Class have not provided their signatures, whether in hard copy, electronically, or digitally, to Defendant. There is no "clear and conspicuous" disclosure.

26. In direct disregard of these regulations, on or after October 16, 2013, Plaintiff received at least four text messages from Defendant on February 14, 2014, March 7, 2014, March 18, 2014 and April 9, 2014. *See* Exhibit "A". Plaintiff did not provide her prior express written consent to Defendant to receive these texts.

**Defendant's Website And Privacy Policy Demonstrate It Does Not Receive Prior Express Written Consent Before Sending Marketing Texts To Its Customers**

27. Defendant's website indicates that it obtains prior express consent, but not prior express written consent, before sending promotions and updates via email and text to its customers. On the homepage a customer has an option to "Sign Up for Special Promotions and Updates" by entering her email address, first and last name, birthday, and cellular telephone number. The customer is then asked, "Would you like to receive text alerts to your mobile device for exclusive promotions?," and she must select "Yes" or "No" from a drop-down menu. A customer also has the ability to update her profile (if already registered) or opt-out of the text messages.

28. While this may be sufficient to establish prior express consent permitted under the previous iteration of 47 C.F.R. §64.1200(a)(2), prior to the October 2013 amendment, it is not adequate to establish prior express *written* consent now required by the amendment. There is no place on the website in which customers must enter their signature, and there are no clear and conspicuous disclosures informing customers that the texts will be made using an automatic telephone dialing system introducing advertisements and/or for telemarketing purposes.

29. Likewise, Defendant's privacy policy ("Policy") indicates that it does not obtain prior express written consent before sending marketing texts to its customers. The Policy states that it "applies to our Websites hosted in the United States, and to our fashion marketing and sales activities, including sales through our store locations," and that "[b]y using our Websites or providing information to us at our stores, you consent to the collection and use of your personal information." Defendant "might also receive

information about you from other sources, such as in providing you special offers that we think will be of interest, and we may add that information to our account information." Defendant "may observe activities, preferences and transactional data . . . relating to your use of our Websites," and "may use this collected or logged information in order to provide better service, to facilitate our customers' use of the website, to track usage of the website, and to address security hazards."  And while customers may visit Defendant's website without registering for an account, if the customer wishes "to add merchandise to your shopping cart, create a wish list or use other special features offered on our site, you will need to provide us with certain information, including your name, address, phone number and email address, to open an account with us."  Defendant will also "collect information about you when you purchase merchandise in our stores or sign-up in our stores to receive our marketing materials."  The Policy attempts to disclaim warranties of any kind, limit Defendant's liability "for any indirect, incidental, consequential, special or exemplary damages arising out of or in connection with use of the Services," and indemnify Defendant "from and against any and all claims, liabilities, penalties, settlements, judgments, fees (including reasonable attorneys' fees)" arising from it customers' use of its Services.

30.     While the Policy may be sufficient to establish prior express consent, it is not adequate to establish prior express <u>written</u> consent.  There are no clear and conspicuous disclosures in the Policy informing customers that the texts will be made using an automatic telephone dialing system and that they are not required to sign the agreement as a condition of making a purchase from the seller.  To the contrary, the Policy makes it clear that if a customer wishes to make a purchase, she must open an account with Styles for Less by "provid[ing Styles for Less] with certain information, including your name, address, phone number and email address."

## CLASS ACTION ALLEGATIONS

31.     This lawsuit is brought on behalf of Plaintiff and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) to recover the maximum

statutory penalties permitted by 47 U.S.C. § 227(b)(3)(B) and/or 47 U.S.C. § 227(b)(3)(C) for Defendant's repeated violations of the TCPA and 47 C.F.R. § 64.1200 as alleged herein. Plaintiff seeks certification of the following Class:

> All consumers who received a text message which includes or introduces an advertisement or constitutes telemarketing from Defendant from October 16, 2013, to the present, which text message was not made for emergency purposes, was not made by a tax-exempt nonprofit organization, did not deliver health care message, or was not made with the recipient's prior express written consent.

32. Excluded from the Class definition are Defendant, its corporate parents, subsidiaries and affiliates, officers and directors, and any entity in which Defendant has a controlling interest, and the legal representatives, successors, or assigns of any such excluded persons or entities. Further excluded are Plaintiff's counsel and the assigned Judge and the Judge's family.

33. Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class members via their cellular telephones by using an automatic telephone dialing system to send marketing text messages, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and in so doing, Defendant invaded the privacy of Plaintiff and the Class members. Plaintiff and the Class members were damaged thereby.

34. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class

definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

35. ***Numerosity.*** The members of this Class are so numerous [and geographically dispersed] that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains hundreds if not thousands of members.

36. ***Existence and Predominance of Common Questions of Law and Fact.*** The common questions of law and fact, which arise from Styles for Less's uniform pattern and practice of prohibited conduct, exist as to all members of the Class and predominate over questions affecting only individual Class members. The common legal and factual questions include, but are not limited to, the following:

    a.    Whether each Class member provided written consent to receive advertising or telemarketing texts from Styles for Less;

    b.    Whether Styles for Less sent advertising or telemarketing text messages to its customers' cellular telephone lines via an automatic telephone dialing system or an artificial or prerecorded voice;

    c.    Whether such texts were for commercial purposes;

    d.    Whether such texts were for commercial purposes but did not include or introduce an advertisement or constitute telemarketing;

    e.    Whether such texts were for emergency purposes;

    f.    Whether Styles for Less is a tax-exempt nonprofit organization;

    g.    Whether Styles for Less is a "covered entity" or "business associate" as those terms are defined in the HIPAA Privacy Rule, 45 C.F.R. § 160.103;

    h.    Whether the texts sent by Defendant were for the purpose of delivering "health care" messages as that term is defined in the HIPAA Privacy Rule, 45 C.F.R. § 160.103;

      i.      Whether Styles for Less' text messages to its customers violate the TCPA (47 U.S.C. § 227) and 47 C.F.R. § 64.1200;

      j.      Whether Class Members are entitled to statutory damages afforded under 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C); and

      k.      Whether Class Members are entitled to attorneys' fees under Cal. Code of Civ. Pro. § 1021.5.

37. ***Typicality.*** The claims asserted by Plaintiff in this action are typical of the claims of the members of the Class, as the claims arise from the same course of conduct by Defendant, and the relief sought is common. Plaintiff received at least one marketing text message from Defendant without providing prior express written consent to Defendant, and therefore, Plaintiff, like every other Class member, was exposed to virtually identical conduct and is entitled to civil penalties in amounts of $500.00 up to $1,500.00 per occurrence/violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

38. ***Adequacy of Representation.*** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class, and [she] has no conflict of interest with other Class members. Plaintiff has also retained experienced counsel who are competent in multi-party, class, and civil litigation.

39. Plaintiff seeks on behalf of herself and the entire Class, on grounds generally applicable to the entire class: a determination of liability; declaratory relief; and the maximum statutory penalty permitted by 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

40. ***Superiority.*** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the likelihood of individual Class members prosecuting separate claims is remote, and individual Class members do not have a significant interest in individually controlling the prosecution of separate actions. In this action the statutory damages to which each individual Class member is entitled are relatively small, and the expense and burden of individual litigation would make it

impracticable for proposed Class members to prosecute their claims individually. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them, thereby allowing Defendant's unlawful conduct to continue unabated. Furthermore, even if Class members could afford such individualized litigation, the court system could not: individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts, and it would increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class-action device provides the benefits of adjudication of these issues in a single proceeding, uniformity of decision, and comprehensive supervision by a single court, and it presents no unusual management difficulties under the circumstances here.

41.   [In the alternative, the Class also may be certified because Defendants have acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole appropriate.]

## FIRST CAUSE OF ACTION
**Knowing and/or Willful Violations of the Telephone Consumer Protection Act**
**47 U.S.C. § 227**

42.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

43.   The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227.

44.   Here, Defendant, either directly or through its agents, knowingly and/or willfully contacted Plaintiff and the Class members via their residential or cellular telephones by using an automatic telephone dialing system or an artificial or prerecorded voice to place advertising or telemarketing calls. Defendant knew or should have known that none of the calls or texts fit into any exemption listed in 47 U.S.C. § 227(b)(2)(B) or

47 C.F.R. §§ 64.1200(a)(2) or (a)(3). Therefore, Defendant knew that it was required to obtain prior express written consent under 47 C.F.R. §§ 64.1200(a)(2) and (a)(3) prior to placing these calls and/or sending these texts. Yet Defendant did not and does not obtain prior express written consent or even prior express consent (under 47 U.S.C. §§ 227(b)(1)(A)(iii) and (b)(1)(B)). Therefore, Defendant has committed knowing and/or willful violations of the TCPA.

45. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. §§ 227(b)(3)(B) and (b)(3)(C).

46. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION (IN THE ALTERNATIVE)
### Negligent Violations of the Telephone Consumer Protection Act
### 47 U.S.C. § 227

47. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

48. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including, but not limited to, each and every one of the above-cited provisions of 47 U.S.C. § 227.

49. Here, if the Court does not find that Defendant's violations of the TCPA were knowing and/or willful, then the Court should find that Defendant violated the TCPA through its negligent conduct. Defendant, either directly or through its agents, contacted Plaintiff and the Class members via their cellular telephones by using an automatic telephone dialing system or an artificial or prerecorded voice to place advertising or telemarketing calls. None of the calls or texts fit into any exemption listed in 47 U.S.C. § 227(b)(2)(B) or 47 C.F.R. §§ 64.1200(a)(2) or (a)(3). Yet Defendant did

not and does not obtain prior express written consent (under 47 C.F.R. §§ 64.1200(a)(2) and (a)(3)) prior to sending these texts. Therefore, Defendant violated the TCPA.

50. As a result of Defendant's violations of 47 U.S.C. § 227, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages for each and every violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B).

51. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### THIRD CAUSE OF ACTION
### Violations of Restrictions on Telemarketing and Telephone Solicitation
### 47 C.F.R. § 64.1200

52. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

53. The amendments to 47 C.F.R. § 64.1200(a)(2), which became effective on October 16, 2013, require that Defendant obtain prior express written consent before sending texts using an automatic telephone dialing system to the cellular telephones belonging to Plaintiff and the Class because Defendant does not send its texts for emergency purposes, it is not a tax-exempt nonprofit organization, and it does not deliver health care messages to customers as a covered entity or a business associate under HIPAA.

54. Prior express written consent must constitute "an agreement, in writing, bearing the signature of the person called," with a "clear and conspicuous disclosure" informing the signatory that she is authorizing the seller to deliver telemarking calls using an automatic telephone dialing system and that she is not required to sign the agreement as a condition of making a purchase from the seller. *See* 47 C.F.R. § 64.1200(f)(8). There are no disclosures regarding the texts on Defendant's website or in its privacy policy, and Plaintiff and the Class have not provided their signatures, whether in hard copy, electronically, or digitally, to Defendant.

55. Therefore, Defendant has violated 47 C.F.R. § 64.1200, and Plaintiff and the Class are entitled to an award of $500.00 up to $1,500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. §§ 227(b)(3)(B) and (b)(3)(C).

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF PRAYS FOR A JUDGMENT:

A. Certifying this case as a class action to afford the putative Class members the procedural benefit of the class-action device and to avoid the multiplicity of individual actions;

B. Certifying Plaintiff the class representative and her attorneys, James Patterson and Patterson Law Group, as Counsel for the Class;

C. Awarding Plaintiff and the Class members the maximum statutory penalty permissible pursuant to 47 U.S.C. § 227(b)(3)(B) and/or 47 U.S.C. § 227(b)(3)(C);

D. A declaration of the rights and liabilities of the parties;

E. Awarding Plaintiff and the Class members pre-judgment and post-judgment interest according to California law;

F. Awarding Plaintiff and Class members attorney's fees and costs; and

G. Awarding Plaintiff and Class members such other and further relief as may be appropriate.

Dated: October 22, 2014

**PATTERSON LAW GROUP**

By: /s/ James R. Patterson
James R. Patterson (CA 211102)
**PATTERSON LAW GROUP**
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: 619.756.6990
Facsimile: 619.756.6991
jim@pattersonlawgroup.com

Attorneys for Plaintiff