UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASAL SALLY MANOUCHEHRI and POONEH MEHRAZAR-ARZANI, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STYLES FOR LESS, INC., a California corporation, and DOES 1 through 20,<br><br>Defendant. | Case No.: 14cv2521 NLS<br><br>**ORDER:**<br><br>**(1) DENYING MOTION FOR RECONSIDERATION RE JUDGMENT [Dkt. No. 83]; and**<br><br>**(2) DENYING MOTION FOR RELIEF FROM COURT ORDER [Dkt. No. 87].**<br><br>**\*\*\*REDACTED\*\*\*** |

Plaintiffs Asal Manouchehri and Pooneh Mehrazar-Arzani (collectively, Manouchehri) filed this putative class action seeking recovery on behalf of themselves and other customers of defendant Styles for Less, Inc. (Styles for Less) for violation of the Telephone Consumer Protection Act (TCPA).  Plaintiffs allege that Styles for Less used an automatic telephone dialing system to send unauthorized advertising and marketing text messages to its customers.  This court granted preliminary approval of the class action settlement in June 2016 and final approval in February 2017.

Manouchehri filed a motion for reconsideration of the court's final approval order based on new evidence and manifest injustice.  Shortly after that filing, Styles for Less filed a motion for relief from this court's final approval order limited to relief on the payment schedule for attorneys' fees.  The court held oral argument on May 18, 2017.  For the following reasons, this court **DENIES** Plaintiffs' motion for reconsideration and **DENIES** Defendant's motion for relief.

**I.      Relevant Factual Background.**

The court held the final fairness hearing on February 8, 2017.  On February 17, 2017 it granted final approval of the class action settlement with modifications to the requested attorneys' fees and class representative incentive awards.  Instead of awarding the requested $900,000 in attorneys' fees and costs and service awards of $7,500 each to Class Representatives Asal Sally Manouchehri and Pooneh Mehrazar-Arzani, the court awarded $660,100.00 in attorneys' fees and costs, $4000.00 to plaintiff Manouchehri and $2500.00 to plaintiff Mehrazar-Arzani.  Styles for Less timely paid the incentive awards, class awards and all administrative costs other than fees and costs owed to class counsel.

For the first installment payment Styles for Less was to pay, by March 3, 2017, $300,000 to class counsel.  But on February 21, 2017—four days after the court issued the order granting final approval and awarding fees and costs—defense counsel told class counsel that Styles for Less could not comply with the payment schedule it had agreed to in the settlement.  Instead, it paid class counsel $25,000 on March 3rd, and asked Manouchehri to work with it to adjust the payment schedule.

On March 17, Manouchehri filed a motion for reconsideration regarding the amount of attorneys' fees based on the new evidence of the increased risk of non-payment by Styles for Less. They also ask the court to increase the amount of the incentive awards. Meanwhile, Styles for Less filed a motion for relief from this court's final approval order limited to only the payment schedule for the attorneys' fees and costs. It seeks a modified payment schedule that allows Styles for Less to both pay the court-ordered amount of fees and costs while allowing it to continue operating its business in the normal course.

At the hearing the court learned that Styles for Less was likely generally aware of its financial predicament at the time of the final fairness hearing, even if they had not yet received the specific report from a third-party consultant regarding their financial status. While the February 21, 2017 report from the consultant discusses an amended payment schedule to Manouchehri, the report appeared to be a recommendation as to the payment amounts and not a descriptive report of action items that Styles for Less had already determined.

## II. Motion for Reconsideration.

### A. Legal Standard.

A judgment can be altered or amended under Rule 59 to (1) correct errors of law or fact upon which the judgment rests; (2) prevent manifest injustice; (3) consider newly presented evidence; or (4) if there is an intervening change in controlling law. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). Rule 59(e) applies when the court has a substantive change of mind. *Tattersalls, Ltd. v. Dehaven*, 745 F.3d 1294, 1299 (9th Cir. 2014) (citation omitted).

A court has discretion to grant or deny a motion for reconsideration. *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1441 (9th Cir. 1991). A Rule 59 motion should not be granted absent highly unusual circumstances. *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). "It cannot be used to ask a court to rethink what it has already thought, merely because a party disagrees with the court's decision." *Weinrich v.*

*U.S. Military*, 2014 U.S. Dist. LEXIS 52229, *2-*3, 2014 WL 146588, *1 (S.D. Cal. April 14, 2014) (Battaglia, J.) (citations omitted); *Beaver v. Tarsadia Hotels*, 2014 U.S. Dist. LEXIS 90600, *6, 2014 WL 3002297, *2 (S.D. Cal. July 1, 2014) (Curiel, J.). "Reconsideration is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Sherman v. Yahoo! Inc.*, 2014 U.S. Dist. LEXIS 91164, *4, 2014 WL 369384, *10 (S.D. Cal. July 3, 2014) (Curiel, J.) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

### B. Fee Award.

Manouchehri argues that the February 17 Order must be amended based on newly discovered evidence and to prevent a manifest injustice in this case. They believe that Styles for Less must have known before the February 8 Final Fairness hearing that it would not be able to pay the majority of the $300,000 payment, as it had agreed to do in the settlement agreement. Manouchehri argues that the recently-revealed "inability or unwillingness to pay" is a relevant new fact for the court to consider regarding risk of non-payment to class counsel.

Styles for Less says it cannot complete payment until December 2020. Manouchehri believes that the proposed 12 installment payments over 45 months demonstrate a significant risk of nonpayment to class counsel, and that it should be compensated for such increased risk of non-payment. They argue that delay of being paid over almost four years as opposed to two years should have been considered because it imposes additional hardships. For example, class counsel advanced more than $30,000 in direct costs, and since 2014 have paid the attorneys who worked on the case as well as the associated indirect and overhead costs. Now, they are spending substantially more time than anticipated administering the settlement and obtaining the benefits provided. To compensate for the increased risk and additional time based on new information, class counsel ask the reconsider the amount of attorneys' fees awarded and instead award the $900,000 in fees and costs originally requested according to the original payment plan. Alternatively they would accept the full $900,000 to be paid out in six installments over

1  three years.  And at a minimum, class counsel ask that the court require Styles for Less to
2  pay any additional costs and fees that class counsel incurred in their efforts to enforce the
3  February 17 order.
4      Styles for Less argues that the payment schedule is unrelated to the amount of fees
5  and costs awarded to class counsel and thus there are no grounds for this court to
6  reconsider its order.  Further, according to the Chief Financial Officer for Styles for Less,
7  Styles for Less did not learn until February 21, 2017—13 days after the final fairness
8  hearing and four days after the final approval order—that it experienced a decline in
9  business that made it impossible to fund all of its cash obligations on the timeline it had
10 agreed to.  Specifically, the CFO explains that he received ▮▮▮▮▮▮▮▮
11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  DeAngelo Decl. ¶ 5.  Further, the month-end
14 sales reports showed that sales were down approximately ▮▮▮▮▮▮▮▮▮▮
15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  compared to the previous year.
16 DeAngelo Decl. ¶ 4.  Based on this information and the fact that ▮▮▮▮▮▮▮
17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  DeAngelo Decl. ¶ 7.
19 Also relevant to Styles For Less' cash flow problems is ▮▮▮▮▮▮▮▮▮▮▮
20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  DeAngelo Decl. ¶ 11.
22     In ruling on the motion for final approval, the court evaluated "risk" with respect to
23 two issues:  (1) the risk class counsel undertook in taking on the litigation, evaluated with
24 respect to whether the settlement was fair, reasonable and adequate; and (2) the risks
25 associated with the representation when doing the lodestar cross-check, including the risk
26 of non-payment of attorneys' fees.  Feb. 17 Order, pp. 11, 14.  The relevant evaluation of
27 risk here is how risk was accounted for in the lodestar cross-check, if the new evidence of
28 non-payment merits reconsideration of the court's evaluation of that risk, and if a re-

evaluation would warrant an increase in the fee award.

The court found that the $3.6 million settlement fund was "a quantifiable amount sufficient upon which to base the percentage-of-fund fee award." Feb. 17 Order, p.17. It noted that while class counsel achieved a positive benefit for the class, there was little formal litigation and the contingent nature of the fee and financial burden by class counsel was not significant because no extensive discovery was done and the case settled early in the litigation. *Id.*, p.18.

The court then used the lodestar to cross-check the reasonableness of the requested $900,000. The unadjusted lodestar was $619,847. The court then considered whether a multiplier should be used, and evaluated "the 'quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" Feb. 17 Order, p.20 (citing *Hanlon v. Chrysler*, 150 F.3d 1011, 1029 (9th Cir. 1998)). It found that for purposes of the cross-check, any risk of nonpayment was accommodated for by the protracted payment schedule, and it did not find that the risk merited an increase to the multiplier. Feb. 17 Order, p.20. Likewise, the court found that the case was not complex or novel enough to merit an increase in the multiplier. *Id.* The court then found that there was a risk of duplicative work done by the Plaintiffs' two law firms in the case and that Mr. Patterson's hourly rate was high for a class action attorney in this district and with his experience. *Id.* at 20-21. Ultimately the court balanced the lack of complexity and high hourly rate with the risk of nonpayment and risk in losing this litigation, and found that a multiplier of "1" was appropriate as opposed to a negative or positive multiplier. *Id.* at 21.

Ultimately, the court calculated its attorney fee award based on the percentage of the fund method, and found "that considering the early stage of the litigation at which point this case settled and lack of particularly complex issues or significant risk to class counsel, an award of 20% of the net settlement fund is appropriate." Feb. 17 Order, p.22. Now, the question is whether the newly-proposed protracted payment plan is significant enough to merit a new finding on the lodestar cross-check. Reviewing the early

settlement point for this litigation, lack of complexity and high hourly attorney rate, and comparing that to the delay in payment, the court finds that the extraordinary remedy of reconsideration is not appropriate here.  Specifically, the breach of the payment plan does not change the court's balancing of factors under the lodestar cross-check.  In sum, had the court known the true financial state of Styles for Less at the time of the hearing, any perceived increase in risk of nonpayment would not have been significant enough to increase either the 20% benchmark for the percentage-of-the fund calculation or the multiplier in the lodestar cross-check, considering the lack of complexity of this case, high hourly attorney rates, risk of duplicative work, lack of extensive discovery or motion practice, and fact that the case settled early in the litigation.  Balancing the "new" and perhaps increased risk of nonpayment with the other noted factors, the court finds that the $660,100 recovery is still an appropriate fee award in this case.

While the court finds that there is not significant new evidence for it to employ the extraordinary remedy of reconsidering its order, it notes that what Styles for Less proposes as a modified payment schedule may be a material change to what they had agreed to in the settlement agreement.  Styles for Less does not address the significant benefit it would receive by extending payments for nearly two years without any proposed interest payment to class counsel or the recognizable loss that class counsel would receive from the lengthy delay in payment and lack of any significant payment at the front end.

The real underlying issue regarding the proposed new payment schedule is a breach of the settlement agreement.  Enforcement of the judgment is an issue separate from reconsideration of the order.  The court retained jurisdiction over this case for purposes of enforcement of the settlement agreement.  Feb. 17 Order, p.28.  But that is not the question the parties pose to the court in these motions.

The court **DENIES** the motion to reconsider the attorneys' fees award because there is no compelling new evidence or manifest injustice to merit reconsideration of the order.

### C. Incentive Awards.

Manouchehri also asks the court to reconsider the incentive awards. In the February 17 Order, the court reduced the requested $7,500 amounts to $4,000 for Manouchehri and $2,500 to Mehrazaz-Arzani. It reduced the awards to these amounts after it considered that this case settled at an early point in the litigation, the Plaintiffs undertook limited risk and had limited involvement, and Manouchehri expended less than 40 hours on this case while Mehrazar-Arzani expended approximately half of that time and did not participate in any discovery. Feb. 17 Order, p.23. The court reviewed the incentive awards for similar cases in this district that awarded incentives ranging from $1,500 to $5,000, and found that the requested $7,500 each was out of line with cases that settled at a similar stage in the litigation. Feb. 17 Order, pp.23-24.

The court also noted that the plaintiffs' respective refusals of individual offers of settlement were not factors to consider in assessing the reasonableness of the incentive awards, and cited to *Van Vranken v. Atlantic Richfield Co.,* 901 F. Supp. 294, 299 (N.D. Cal. 1995). *Van Vranken* cited these five factors that a court may consider when assessing the reasonableness of a class incentive award: (1) financial and other risks to the class representative in filing suit; (2) notoriety and personal difficulties encountered; (3) time and effort expended; (4) duration of the litigation; and (5) personal benefit (or lack thereof) as a result of the litigation. 901 F. Supp. at 299.

Manouchehri argues that a different decision from this district requires this court to consider the fact that a class representative had previously rejected a settlement offer. *See Mirkarimi v. Nevada Prop. 1, LLC*, 2016 WL 795878 (S.D. Cal. Feb. 29, 2016) (Moskowitz, C.J.). This court finds that because a class representative incentive award is a discretionary decision based on various factors, *see Van Vranken*, 901 F. Supp. at 299, the court need not consider that factor, and thus finds no basis for reconsideration.

In any event, even if the court considered the fact that the class representatives each rejected individual settlement offers, an evaluation of that factor would still not merit reconsideration of the awards. In *Mirkarimi*, the court noted that incentive awards

"are intended to 'compensate representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.'" 2016 WL 795878, at *5 (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)). *Mirkarimi* also cited to *Radcliffe v. Experian Information Solutions, Inc.*, 715 F.3d 1157 (9th Cir. 2013), which reviewed Ninth Circuit precedent regarding improper incentive awards. *Radcliffe* focused on a court's duty to "scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." *Id.* at 1163.

*Mirkarimi* was a class action with a single class representative that alleged violations of the California Privacy Act by recording calls with California residents without first obtaining their consent. The class consisted of 100,541 individuals, per-claim payments exceeded $750, and the case involved three years of pleadings, discovery disputes and mediation. The settlement fund was $14,500,000, which was the second highest settlement in a California Privacy Act case. The court considered different factors and found that a $30,000 incentive award to a single representative was proper:

> Plaintiff alleges a total of 120 hours of work, both preparing for and participating in the litigation. (ECF No. 115.) Furthermore, Plaintiff states that the amount requested is comparable to the amount of money he would have made devoting his time to his law practice—where he bills at a rate of $375 per hour—instead of the class action. (Id.) Finally, Plaintiff notes that he was approached with a $30,000 settlement offer in early 2014, which he refused because other class members would have no way of knowing that their calls were being recorded. (Id.)
>
> Here, a $30,000 enhancement award is proper. … Plaintiff took an active role in the litigation, taking time away from his law practice to assist class counsel in this case. By taking time out of his practice, Plaintiff took a financial risk. Moreover, the $30,000 award is reasonable given the comparison between the initial settlement amount proposed to Plaintiff and with the current settlement agreement of $14,500,000, which Plaintiff helped secure.

*Id.* at *6.

Here, Manouchehri notes "the significant monetary sacrifices that the Plaintiffs made for the benefit of the Class members having rejected offers of individual relief in excess of $34,000 for Plaintiff Mehrazar-Arzani, and $48,000 for Plaintiff Manouchehri." Reply, p.8. But there is no declaration or explanation of how their refusals of money translated into a tangible "monetary sacrifice" by either Plaintiff. Unlike the plaintiff in *Mirkarimi* who devoted significant time to the class action litigation instead of his law practice, there is no evidence that either Plaintiff's participation in this action impacted either one's ability to work, or that either one otherwise incurred a financial sacrifice, or loss, due to their participation. In other words, even if the court considered the class representatives' refusal of the individual offers of judgment as a factor in determining the incentive awards, their incentive awards do not merit adjustment. Considering the Ninth Circuit's directive to carefully scrutinize incentive awards and the noted awards found reasonable in this district, the single additional factor of refusing an offer of individual settlement would not have been sufficient here to overcome the other factors relevant to the award determination:

> Here, Manouchehri was involved in this case for one year longer than Mehrazar-Arzani and participated in discovery. Manouchehri expended 36.9 hours on this case while Mehrazar-Arzani expended 21.5 hours on this case. It does not seem reasonable to award the same amount to both Plaintiffs, as Manouchehri spent over 20 hours responding to written discovery and preparing for a deposition, while Mehrazar-Arzani did not do any discovery and filed her case one month before the case settled. … Considering that this case settled at an early point in the litigation and the limited risk, personal difficulties and amount of time each devoted to this case, and having reviewed the incentive awards in similar cases in this district, the court finds it reasonable to award **$4000 to Manouchehri** and **$2500 to Mehrazar-Arzani**.

Feb, 17 Order, pp.23-24 (emphasis in original).

Even if the court considered the fact that Manouchehri and Mehrazar-Arzani

declined to accept individual settlements, considering that fact with the totality of the factors regarding the amount of the settlement fund, recovery to individual class members, limited involvement of time, and lack of information regarding any financial burden that they bore, including time away from work, the incentive awards adequately compensate the class representatives for the roles they played in this case.  The court **DENIES** the motion to reconsider the incentive awards to the class representatives.

### III. Motion for Relief.

#### A. Legal Standard.

A court cannot use Rule 60 to "change its mind" because it reached a different conclusion on the challenged order.  *Tattersalls*, 745 F.3d at 1299.  It can only apply Rule 60 when it "made a blunder in execution[.]'"  *Id.*  (internal citation omitted).  The grounds for relief from a final judgment under Rule 60 include:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence . . .;
> (3) fraud . . ., misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; . . . or
> (6) any other reason that justifies relief.

Fed. R. Civ. Proc. 60(b).

#### B. Discussion.

Styles for Less asks the court to alter the payment schedule by keeping the $660,100 amount the same but stretching out payments from 24 months to 45 months, and not requiring Defendant to provide significant money up front.  In order to make all payments and continue its normal business operations, Styles for Less proposes the following modified payment schedule:

| Date | Payment | Amount |
|---|---|---|
| 3/6/2017 | Good faith payment (already made) | $25,000 |
| 9/30/2017 | Second installment | $25,000 |
| 12/6/2017 | Third installment | $100,000 |
| 3/30/2018 | Fourth installment | $25,000 |

| | | |
|---|---|---|
| 9/30/2018 | Fifth installment | $25,000 |
| 12/30/2018 | Sixth installment | $100,000 |
| 3/30/2019 | Seventh installment | $25,000 |
| 9/30/2019 | Eighth installment | $25,000 |
| 12/30/2019 | Ninth installment | $100,000 |
| 3/30/2020 | Tenth installment | $25,000 |
| 9/30/2020 | Eleventh installment | $25,000 |
| 12/30/2020 | Twelfth installment | $160,100 |
| | | **Total $660,100** |

In the settlement agreement the parties state that they "may agree, subject to the approval of the Court where required, to reasonable extensions of time to carry out the provisions of the Agreement." Settlement Agmt, § III.G.9. Here, there is no mutual agreement to extend the time to carry out the provisions of the settlement agreement. The court, therefore, has no basis on which to enforce an "agreement" on the newly-proposed payment plan. Further, there is no basis under Rule 60, or any other rule, to allow the court to "change its mind" as to the payment plan:

> It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness. *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). Neither the district court nor this court have the ability to "delete, modify or substitute certain provisions." *Id.* at 630. The settlement must stand or fall in its entirety. *Id.*

*Hanlon*, 150 F.3d at 1026.

The court **DENIES** Styles' for Less motion for relief regarding the payment plan.

**IT IS SO ORDERED.**

Dated: May 31, 2017

Hon. Nita L. Stormes
United States Magistrate Judge